HUESTON HENNIGAN LLP
Moez M. Kaba, State Bar No. 257456
*mkaba@hueston.com*
Michael Todisco, State Bar No. 315824
*mtodisco@hueston.com*
Jennifer N. Popp, State Bar No. 326825
*jpopp@hueston.com*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Defendant*
*Monster Energy Company*

KNOBBE, MARTENS, OLSON & BEAR, LLP
Steven J. Nataupsky, State Bar No. 155913
*steven.nataupsky@knobbe.com*
Lynda Zadra-Symes, State Bar. No. 156511
*lynda.zadrasymes@knobbe.com*
Matthew Bellinger, State Bar No. 222228
*matt.bellinger@knobbe.com*
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Defendant*
*Orange Bang, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC,

Plaintiffs,

vs.

ORANGE BANG, INC., and MONSTER ENERGY COMPANY,

Defendants.

Case No. 5:20-cv-01464-DSF-SHK

Hon. Dale S. Fischer

**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**

[Declaration of Jennifer Popp with Exhibits, [Proposed] Order, and Application to Seal filed concurrently herewith]

**Date:** **October 19, 2020**
**Time:** **1:30 PM**
**Place:** **Courtroom 7D**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES TO THIS ACTION AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 19, 2020, at 1:30 p.m. or as soon thereafter as the matter may be heard, in the above-titled Court, located at First Street Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California, Defendants Orange Bang, Inc. and Monster Energy Company will and hereby do jointly move this Court to compel arbitration of Plaintiffs Vital Pharmaceuticals, Inc.'s ("VPX") and JHO Intellectual Property Holdings, LLC's ("JHO") claims. Pursuant to Local Rule 7-3, the parties met and conferred regarding this Motion but did not reach a resolution.

The Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, upon the grounds that VPX has bound itself, in two separate arbitration agreements, to arbitrate this dispute, including questions of arbitrability, and that JHO is also bound through its relationship with VPX and its alleged ownership of the trademarks at issue.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jennifer Popp with Exhibits, all papers and records on file in this case, all other matters on which the Court may take judicial notice, and any further argument or evidence that may be made at the hearing on the Motion.

Dated: September 16, 2020

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ Moez M. Kaba*
Moez M. Kaba
*Attorneys for Defendant Monster Energy Company*

KNOBBE, MARTENS, OLSON & BEAR, LLP

By: */s/ Steven J. Nataupsky*
Steven J. Nataupsky
*Attorneys for Defendant Orange Bang, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION & BACKGROUND ..... 1

II. LEGAL STANDARD ..... 4

III. THIS DISPUTE BELONGS IN ARBITRATION ..... 5

A. The Parties Reserved Arbitrability Questions for the Arbitrator ..... 5

B. The Settlement Agreement's Arbitration Clause Encompasses This Dispute ..... 7

C. Separately and Additionally, Orange Bang and VPX's 2020 Agreement to Arbitrate Encompasses This Dispute ..... 11

D. None of VPX and JHO's Arguments Have Merit ..... 12

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank Leumi, USA v. Miramax Distrib. Servs., LLC,*
2018 WL 7568361 (C.D. Cal. Dec. 27, 2018) ........ 6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 3, 5, 6, 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ passim

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ........ 4

*Comedy Club, Inc. v. Improv West Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........ 5

*Conrad v. Phone Directories Co.*,
585 F.3d 1376 (10th Cir. 2009) ........ 5

*Daniels v. Securitas Sec. Servs. USA, Inc.*,
2019 WL 4187383 (C.D. Cal. Apr. 5, 2019) ........ 5, 11

*Dominguez v. T-Mobile USA, Inc.*,
2017 WL 8220598 (C.D. Cal. Jan. 18, 2017) ........ 4

*EDS Fin. Servs., Inc. v. Kroop*,
2018 WL 5880077 (C.D. Cal. Apr. 10, 2018) ........ 13

*Employment Sols. Mgmt., Inc. v. Partners Pers.-Cent. Valley, Corp.*,
2017 WL 7370971 (C.D. Cal. Nov. 8, 2017) ........ 12

*Fadal Machining Centers, LLC v. Compumachine, Inc.*,
461 F. App'630 (9th Cir. 2011) ........ 6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 14

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2019) ........ 3, 5, 9

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
325 F.3d 586 (5th Cir. 2003) ........ 14

*In re Lithium Ion Batters Antitrust Litig.*,
2016 WL 5791357 (N.D. Cal. Oct. 4, 2016) ........ 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 2650689 (N.D. Cal. July 6, 2011) ........ 7

TABLE OF AUTHORITIES (cont.)

Page(s)

*Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) .... 12

*Malovani v. Doe*, 2012 WL 12886493 (C.D. Cal. May 14, 2012) .... 13

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) .... 4

*Moffett v. Recording Radio Film Connection, Inc.*, 2019 WL 6898955 (C.D. Cal. Oct. 4, 2019) .... 5, 7

*New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339 (9th Cir. 1990) .... 6

*Peace Arch Entm't Grp., Inc. v. Image Entm't*, 2008 WL 11338446 (C.D. Cal. Oct. 30, 2008) .... 12

*Pilgrim Home & Hearth, LLC v. Panacea Prods. Corp.*, 2010 WL 11603083 (C.D. Cal. Nov. 4, 2010) .... 8, 9, 10, 11

*Robinson v. Delicious Vinyl Records Inc.*, 2014 WL 5332837 (C.D. Cal. Oct. 20, 2014) .... 8, 9

*Russell Rd. Food & Beverage, LLC v. Spencer*, 829 F.3d 1152 (9th Cir. 2016) .... 14

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) .... 3, 7, 8

*Tigra Tech. v. Techsport Ltd.*, 2011 WL 2710678 (C.D. Cal. July 12, 2011) .... 10

*Turtle Ridge Media Grp., Inc. v. Pacific Bell Directory*, 140 Cal. App. 4th 828 (2006) .... 4

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.* 2020 WL 2730926 (C.D. Cal. Mar. 31, 2020) .... 6

**Statutes**

9 U.S.C. §§ 1-16 .... 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION & BACKGROUND

Defendant Orange Bang, Inc. ("Orange Bang") and Plaintiff Vital Pharmaceuticals, Inc. ("VPX") both sell flavored beverages called "Bang." (Declaration of Jennifer Popp ("Popp Decl."), Ex. 1., ¶¶ 7-8.) Orange Bang started selling its Bang beverage in the 1970s; VPX did not begin selling its own Bang beverage until 2009. (*Id.*, ¶¶ 11-12.) By that time, Orange Bang's Bang beverage had developed a strong reputation and a devoted consumer following. (*Id.*) Thus, to protect its brand, Orange Bang sued VPX for trademark infringement and unfair competition in 2009 ("2009 Action"). (*Id.*)

Orange Bang eventually agreed to settle the 2009 Action, but only after entering into an agreement with VPX that clearly delineated the parties' rights and obligations going forward. That contract ("Settlement Agreement") was principally designed to prevent consumer confusion between the two Bang beverages. In short, the parties agreed to keep their beverages conceptually distinct and physically separate. VPX agreed that it would use the Bang mark only in association with two classes of beverages: (1) "a nutritionally fortified, creatine-based beverage"; or (2) "a nutritionally fortified beverage which enhances performance, and which is not creatine based, so long as the beverage . . . is only marketed and sold through vitamin and nutritional supplement stores . . . or to the vitamin and dietary supplement sections only of any convenience or other stores." (Popp Decl., Ex. 2 ("Settlement Agreement"), § 7.)

As part of the Settlement Agreement, the parties agreed that "Any Claim or controversy arising out of or relating to this Action, this Agreement or any breach thereof shall be submitted to arbitration in Los Angeles County, California, before an experienced arbitrator licensed to practice law in California and selected in accordance with the procedures of the American Arbitration Association, as the exclusive remedy for such claim or controversy." (Settlement Agreement, § 18.) The Settlement

Agreement recognizes that the parties' rights and obligations under the agreement can be assigned to other entities. (*Id.*, § 14 (The Settlement Agreement "shall bind and inure to the benefit of the Parties hereto and their respective . . . successors, predecessors and assigns of each of them . . . .").)[1]

In 2019, Orange Bang discovered that VPX was breaching the Settlement Agreement. Orange Bang learned that VPX had changed its formula such that VPX's Bang beverage was not a "creatine-based product." (Popp Decl., Ex. 3.) Orange Bang also learned that VPX was selling several other Bang products that do not even purport to have creatine in them, including a coffee drink and a "natural" drink, in the general beverage sections of general retail establishments and through online channels. (*Id.*) Marketing and selling non-creatine-based beverages under the Bang mark and outside "vitamin and nutritional supplement stores . . . or [] the vitamin and dietary supplement sections only of any convenience or other stores" violates the Settlement Agreement. (Settlement Agreement, § 7D.)

In March 2019, Orange Bang demanded that VPX comply with the terms of the Settlement Agreement. (Popp Decl., Ex. 3.) VPX refused to do so. Instead, in August 2019 VPX filed a complaint for declaratory judgment in Los Angeles Superior Court as to whether it had breached the Settlement Agreement. (Popp Decl., Ex. 4.) In light of the broad and clear arbitration clause set forth in the Settlement Agreement, Orange Bang filed a motion to compel arbitration in that case. A few months later, at VPX's behest, the parties entered into an additional arbitration agreement. VPX "offer[ed] to dismiss" the Superior Court proceeding "without prejudice [] and proceed to binding arbitration, in exchange for a waiver of costs" of the Superior Court proceeding. (*Id.*, Ex. 5.) Orange Bang accepted this offer. (*Id.*)

[1] Moreover, if any party "institute[s] any legal or administrative proceedings with respect to any claims waived under [the Settlement] Agreement . . . the responding party shall be entitled to recover . . . damages, costs, expenses, expert witness fees and attorneys' fees incurred as a result of said action." (*Id.*)

In June 2020, Orange Bang and Monster Energy Company ("Monster") initiated an arbitration against VPX before the American Arbitration Association.[2] VPX affirmatively engaged in the arbitration by attending a call with the case manager, accepting Los Angeles as the location of the arbitration, and taking part in the arbitrator selection process. (Popp Decl., ¶ 10.) Just one day after the arbitrator was selected, however, VPX initiated this lawsuit concerning the exact same issues that are currently proceeding in arbitration. The claims in this lawsuit belong in arbitration. The Court should grant this Motion and allow Orange Bang and Monster's claims against VPX, as well as any of VPX and JHO's counterclaims, to proceed in the pending arbitration for the following, independent reasons:

*First*, Orange Bang and VPX reserved arbitrability questions for the arbitrator. When parties agree to do so, the court "possesses no power to decide the arbitrability issue[s]" and must send the dispute to arbitration for the arbitrator's review. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Orange Bang and VPX reserved such questions by incorporating the AAA Rules into the Settlement Agreement's broad arbitration clause. (Settlement Agreement, § 18); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). Given this clear and unmistakable reservation, the Court must return this dispute to arbitration.

*Second*, the Settlement Agreement's arbitration clause encompasses each claim in this dispute. (Settlement Agreement, § 18.) The arbitration clause is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (affirming the district court's order compelling arbitration). It pulls in any claim that "touch[es]" the Settlement Agreement or the 2009 Action into arbitration. *Simula,*

[2] Orange Bang previously assigned its "rights and interests in and to the Settlement Agreement" to Monster. (Popp Decl., ¶ 9.)

*Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). As each claim in this dispute is premised on the same factual allegations as the Settlement Agreement and the 2009 Action, each is arbitrable.

*Third*, each claim in this dispute is also encompassed by Orange Bang and VPX's additional arbitration agreement executed in January 2020. *Chiron*, 207 F.3d at 1131.

For any of these three reasons, the Court should grant this Motion and return this dispute to arbitration.

## II. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA") applies to all contracts to a transaction "involving commerce" or "affecting commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (explaining that the phrase "involving commerce" signals "the broadest permissible exercise of Congress' Commerce Clause power" and sweeps in activity that "affect[s] interstate commerce"). The FAA applies to this dispute. The Settlement Agreement affects interstate commerce: it was entered into by corporations of two different states (Florida and California) and concerns beverage products sold nationwide. (ECF No. 1 ("Compl."), ¶¶ 5, 7, 12); *Turtle Ridge Media Grp., Inc. v. Pacific Bell Directory*, 140 Cal. App. 4th 828, 832 (2006) (applying the FAA to a dispute between California and Tennessee corporations concerning products sold in California and Nevada); *Dominguez v. T-Mobile USA, Inc.*, 2017 WL 8220598, at *4 (C.D. Cal. Jan. 18, 2017) (applying the FAA to a dispute between T-Mobile and a customer, "citizens of different states," concerning T-Mobile's "provision of wireless service to Plaintiff in California and the greater United States").

The FAA demands that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron*, 207 F.3d at 1130. As a result of the "emphatic federal policy in favor of arbitral dispute resolution," *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012), "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration." *Chiron*, 207 F.3d at 1131. In other words, "where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009).

In accordance with the presumption of arbitrability, the Court must grant a motion to compel arbitration where (1) there is a valid agreement to arbitrate, and (2) the dispute falls within the scope of the arbitration agreement. *Chiron*, 207 F.3d at 1130. As both elements are satisfied here, if the Court reaches this issue, the Court should grant this Motion and stay this lawsuit pending resolution of arbitration. *Daniels v. Securitas Sec. Servs. USA, Inc.*, 2019 WL 4187383, at *5 (C.D. Cal. Apr. 5, 2019) ("Since the Court has determined that Plaintiff's claims are arbitrable, it will stay the case, pending resolution of arbitration.").[3]

## III. THIS DISPUTE BELONGS IN ARBITRATION

### A. The Parties Reserved Arbitrability Questions for the Arbitrator

The first question for the Court is whether the parties "clearly and unmistakably" reserved arbitrability questions for the arbitrator. *Brennan*, 796 F.3d at 1130-32. If they did, the Court "possesses no power to decide the arbitrability issue[s]" and must return the dispute to the arbitrator. *Schein*, 139 S. Ct. at 529; *Moffett v. Recording Radio Film Connection, Inc.*, 2019 WL 6898955, at *4 (C.D. Cal. Oct. 4, 2019) ("[W]hen the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override that decision.").

An agreement clearly and unmistakably reserves arbitrability questions for the arbitrator when it incorporates the American Arbitration Association ("AAA") Rules. *Brennan*, 796 F.3d at 1130 ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate

[3] Defendants reserve the right to file a Rule 12(b)(6) motion to dismiss if the Court denies this Motion. *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1383 n.2 (10th Cir. 2009) ("If a party files a motion under FAA §§ 3 or 4 [and] that motion is denied . . . nothing prevents that party from then filing a Rule 12 motion to dismiss.").

arbitrability.”). In *Fadal Machining Centers, LLC v. Compumachine, Inc.*, for example, the Ninth Circuit held that the parties’ incorporation of the AAA Rules alone was sufficient to establish that the parties agreed to arbitrate arbitrability. 461 F. App’x 630, 632 (9th Cir. 2011).

Likewise, in *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, this Court determined the parties had reserved arbitrability questions for the arbitrator where the arbitration agreement incorporated the JAMS rules, including that the arbitrator be “selected pursuant to the JAMS rules and procedures.” 2020 WL 2730926, at *2 (C.D. Cal. Mar. 31, 2020) (Fischer, J.) (granting motion to compel arbitration).

As in *Fadal* and *Worldwide*, the parties here clearly and unmistakably reserved arbitrability questions for the arbitrator. *Brennan*, 796 F.3d at 1130. The arbitration clause mandates that the parties select an arbitrator “in accordance with the procedures of the American Arbitration Association.” (Settlement Agreement, § 18.) To trigger the AAA’s arbitrator selection process, the initiating party must file a AAA Demand for Arbitration. (Popp Decl., Ex. 6, R-4.) The AAA Rules, including the arbitrator selection process, go into mandatory effect once the Demand for Arbitration is filed. (*Id*., R-1, R-12.)

The parties’ broad arbitration clause further underscores their intention to reserve arbitrability questions for the arbitrator. The parties agreed to arbitrate any claim “arising out of or relating to” the Settlement Agreement. (Settlement Agreement, § 18.) When found in a “commercial arbitration clause,” this language can constitute “clear and unmistakable evidence of an intent to arbitrate questions of arbitrability.” *Bank Leumi, USA v. Miramax Distrib. Servs., LLC,* 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) (granting motion to compel arbitration); *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (“[T]he parties may empower the arbitrator to decide arbitrability through the use of a broad arbitration clause.”).

Because the parties agreed to reserve arbitrability questions for the arbitrator, "[t]his Court possesses 'no power' to decide" such questions. *Moffett*, 2019 WL 6898955, at *5 (granting motion to compel arbitration). Accordingly, the Court need not, and should not, reach questions about the viability of arbitration and must return this dispute to arbitration.

**B. The Settlement Agreement's Arbitration Clause Encompasses This Dispute**

Even if the Court reaches the question of the scope of the arbitration clause, it should find that the arbitration clause here is broad and encompasses all claims in this dispute. *Chiron*, 207 F.3d at 1130 ("The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."). Courts broadly interpret "arising out of or relating to" language in an arbitration clause. *Id.* at 1131 (describing "arising out of or relating to" language as "broad and far reaching"). Where such language is present, a party's "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721. This "touch matters" test is easy to satisfy. It encompasses even those matters "not arising directly under the contractual relationship" so long as they are somehow "related to it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011).

*Simula* is instructive. There, the arbitration clause at issue governed all claims "arising in connection with this Agreement." *Simula*, 175 F.3d at 720-21. The Ninth Circuit interpreted this language "expansively" to reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* at 721. Applying this test, the Court determined that each of plaintiff's claims was subject to arbitration. For example, plaintiff premised its antitrust claims on the allegation that defendant used its contract with plaintiff "as an anti-competitive tool to restrain trade." *Id.* As the resolution of these

claims would "necessitate interpreting [the contract] to determine its meaning and whether [it] actually do[es] suppress competition," the claims were arbitrable. *Id.* at 22; *see also Pilgrim Home & Hearth, LLC v. Panacea Prods. Corp.*, 2010 WL 11603083, at *3 (C.D. Cal. Nov. 4, 2010) (applying *Simula*'s analysis to arbitration clause with "arising out of or relating to" language and finding claims arbitrable).

In *Robinson v. Delicious Vinyl Records Inc.*, the court applied *Simula* to determine whether plaintiff's claims—including claims for trademark infringement and unfair competition—were encompassed by plaintiff's settlement agreement with defendant. 2014 WL 5332837, at *8 (C.D. Cal. Oct. 20, 2014). The settlement agreement governed the use of certain trademarks. *Id.* at *2. Plaintiff premised its claims on the "alleg[ation] that [defendant] has improperly used their trademarks or a derivative thereof." *Id.* at 8. The court determined that all ten claims premised on this allegation were arbitrable because "these claims w[ould] require interpretation of the prohibitory language contained in the assignment clause [of the settlement agreement]." *Id.* The court further determined that two additional claims for using plaintiff's likeness without consent were arbitrable because the settlement agreement "expressly permits plaintiff to use [defendant's] name and likeness," so the question of whether *defendant* could use *plaintiff's* name and likeness related to the settlement agreement. *Id.*

Like in the cases above, Orange Bang and VPX agreed to a sweeping arbitration clause that extends to claims "arising out of or relating to" both the Settlement Agreement *and* Orange Bang's original 2009 Action. (Settlement Agreement, § 18 ("Any Claim or controversy arising out of or relating to *this Action*, *this Agreement* or any breach thereof").) As each claim in this dispute is premised on factual allegations that not only "touch" but directly center on the Settlement Agreement and the 2009 Action, each claim is arbitrable. *Simula*, 175 F.3d at 721.

***The first claim*** is for a declaratory judgment that Orange Bang and Monster's claims in arbitration are not arbitrable. As discussed above, the parties reserved

arbitrability questions for the arbitrator. *Schein*, 139 S. Ct. at 529. Regardless, this claim is premised on the allegation that the arbitration clause does not reserve arbitrability questions for the arbitrator. (Compl., ¶ 50.) This claim will require the Court to interpret the Settlement Agreement. As such, it "touches" the Settlement Agreement and is arbitrable. *Pilgrim*, 2010 WL 11603083, at *3 (holding that where a claim "turn[s] on questions of contract interpretation and performance . . . it is arbitrable"). Nevertheless, even if the Court reaches the issue, Orange Bang and Monster's claims are arbitrable.[4]

***The second claim*** is for a declaratory judgment that VPX has the right to use federally registered trademarks. This claim is premised on the contention that "VPX and JHO's BANG family of federally registered trademarks are not the subject of the Settlement Agreement." (Compl., ¶ 59.) Orange Bang and Monster disagree. As this allegation will require the Court to determine whether the "BANG family of trademarks" is subject to the Settlement Agreement's limitations on the use of Bang trademarks, it is arbitrable. *Robinson*, 2014 WL 5332837, at *8 (holding claims arbitrable where they "w[ould] require interpretation of the prohibitory language" in the underlying agreement).

***The third claim*** is for a declaratory judgment of non-infringement and no unfair competition. This claim is premised on numerous allegations as to why there is no likelihood of confusion between Orange Bang's and VPX's Bang beverages. (Compl., ¶¶ 62-71.) Orange Bang's concerns about likelihood of confusion were the focus of both the 2009 Action and the Settlement Agreement. In the 2009 Action, Orange Bang asserted trademark and unfair competition claims premised on likelihood of confusion.

[4] The first claim is for breach of the Settlement Agreement and plainly falls within the arbitration clause. (Compl., ¶ 51; Settlement Agreement § 18.) The remaining four claims, concerning the likelihood of confusion caused by VPX's use of Bang marks, "touch matters" covered by the 2009 Action and the Settlement Agreement, both of which center on preventing consumer confusion regarding the Bang marks. (Compl., ¶ 51; Popp Decl., Ex. 1, ¶¶ 13, 21, 35, 37, 41, 46, 51; Settlement Agreement, § 7.)

(Popp Decl., Ex. 1, ¶¶ 13, 22, 35, 37, 41, 46, 51.) As a result, the Settlement Agreement required Orange Bang and VPX to keep their beverages conceptually distinct and physically separate to limit the likelihood of confusion. (Settlement Agreement, § 7.) Given the overlap between the factual allegations relating to likelihood of confusion, this claim is arbitrable. *Tigra Tech. v. Techsport Ltd.*, 2011 WL 2710678, at *2 (C.D. Cal. July 12, 2011) (holding claim is arbitrable where "there is undeniable overlap between the Distribution Agreement's provisions referencing the 'Tigrasport' trademark and Plaintiff's allegations concerning Defendant's use of that mark").

***The fourth claim*** is for unfair business practices. VPX and JHO allege that Monster "is attempting to assert contractual rights it does not actually possess" because "the Settlement Agreement is not assignable." (Compl., ¶¶ 39, 74.) Whether the Settlement Agreement is assignable is a question of contract interpretation, rendering this claim arbitrable. *Pilgrim*, 2010 WL 11603083, at *4. VPX and JHO also allege that Monster enticed Orange Bang to pursue trademark claims that are "without merit." (Compl., ¶ 74.) Orange Bang's trademark claims implicate the Settlement Agreement's "prohibitory language," *Robinson*, 2014 WL 5332837, at *8, and share factual allegations concerning consumer confusion with both the Settlement Agreement and the 2009 Action. (Compl., ¶ 51; Popp Decl., Ex. 1, ¶¶ 13, 21, 35, 37, 41, 46, 51.) As the arbitration clause covers claims that "touch" the Settlement Agreement and the 2009 Action, this claim is arbitrable. (Settlement Agreement, § 18.); *Simula*, 175 F.3d at 721.

***The fifth claim*** is alleged without any factual detail. VPX alleges that "Monster and [Orange Bang] have agreed, either directly or implicitly, to engage in a joint effort to curtail VPX's ability to fairly compete in the energy drink market." (Compl., ¶ 78.) This "joint effort" is, in VPX's words, Monster's inducement of Orange Bang "to weaponize the Settlement Agreement against VPX's commercial success." (Compl., ¶ 44; *id.*, ¶ 77.) This claim is premised on Orange Bang and Monster's efforts to

enforce the Settlement Agreement. As this claim will require interpretation of the settlement agreement, it is arbitrable. *Pilgrim*, 2010 WL 11603083, at *4.

All claims in both actions fall within the scope of the arbitration clause in the parties' valid Settlement Agreement, so the Court should grant this Motion and stay this lawsuit pending resolution of arbitration. *Daniels*, 2019 WL 4187383, at *5.

**C. Separately and Additionally, Orange Bang and VPX's 2020 Agreement to Arbitrate Encompasses This Dispute**

The Court should also grant this Motion because this precise dispute is also subject to the arbitration agreement executed by Orange Bang and VPX in January of this year. (Popp Decl., Ex. 5.) As VPX does not contest the validity of this 2020 agreement (nor could it), (Compl., ¶ 37), the Court must return this dispute to arbitration so long as it "falls within the scope" of that agreement. *Chiron*, 207 F.3d at 1131 ("Because the parties do not challenge the validity of the Agreement, the FAA restricts our review to deciding only whether the dispute is arbitrable, that is, whether it falls within the scope of the parties' agreement to arbitrate.").

The 2020 arbitration agreement marks the second time VPX has agreed to arbitrate Orange Bang's claims arising out of the 2009 Action and Settlement Agreement. Orange Bang, in its demand letters, objected to VPX's sale of "non-creatine-based beverages under the BANG trademark through trade channels and locations which are not specifically permitted under the Settlement Agreement." (Popp Decl., Ex. 3.) As an example, Orange Bang attached pictures of VPX's Keto Coffee product, but it did not limit its demand to this product. (*Id.*)

Confronted with allegations of breach, VPX raced to the courthouse to position itself as plaintiff by filing an action for declaratory relief on the issue of "whether 'Bang' keto-coffee was a violation of the Settlement Agreement." (Compl., ¶¶ 41-42.) But VPX's cabining of its own claim in no way obligated Orange Bang to do the same. VPX offered to arbitrate the dispute arising out of Orange Bang's demand letter without placing limitations on the claims Orange Bang could bring, and Orange Bang

accepted. (Compl., ¶ 38.; Popp Decl., Ex. 5.) VPX was on notice that Orange Bang might allege any claim related to the factual allegations in its demand letters. *See*, *e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018) (rejecting defendant's narrow view of notice of potential claims triggered by plaintiff's cease and desist letter). Moreover, VPX in fact engaged with the arbitration after receiving notice of Orange Bang and Monster's exact claims in the arbitration demand: VPX attended a call with the case manager, accepted Los Angeles as the hearing location, and engaged in the arbitrator selection process. (Popp Decl., ¶ 10.)

Therefore, even setting aside the question of arbitrability and the arbitration clause set forth in the Settlement Agreement, any claim premised on Orange Bang's demand letter or VPX's earlier declaratory relief claim—concerning VPX's use of Bang trademarks in breach of the Settlement Agreement—is arbitrable under the 2020 arbitration agreement.

**D. <u>None of VPX and JHO's Arguments Have Merit</u>**

Plaintiffs' Complaint alleges several reasons why this dispute does not belong in arbitration. Each fails. Plaintiffs cannot overcome the two valid and binding arbitration agreements that control this dispute.

*First*, VPX and JHO argue that VPX only agreed to arbitrate with Orange Bang, not with Monster, and that "the Settlement Agreement is not assignable." (Compl., ¶ 39.) That is incorrect and immaterial. "[A] party who is a successor or assign of an agreement that contains an arbitration clause may enforce that clause." *Peace Arch Entm't Grp., Inc. v. Image Entm't*, 2008 WL 11338446, at *2 (C.D. Cal. Oct. 30, 2008); *Employment Sols. Mgmt., Inc. v. Partners Pers.-Cent. Valley, Corp.*, 2017 WL 7370971, at *5 (C.D. Cal. Nov. 8, 2017) (granting motion to compel arbitration brought by third-party beneficiaries to a settlement agreement); *EDS Fin. Servs., Inc. v. Kroop*, 2018 WL 5880077, at *1 (C.D. Cal. Apr. 10, 2018) (permitting assignee of rights under settlement agreement to enforce those rights). Orange Bang validly assigned its rights and interests in the Settlement Agreement to Monster. (Popp Decl.,

¶ 9.) The Settlement Agreement expressly recognizes that the parties may assign their interests to other entities and, in the event of such assignment, the Settlement Agreement is binding on "assigns." (*See* Settlement Agreement, § 14 ("This Agreement shall bind and inure to the benefit of the Parties hereto and . . . ***assigns of each of them***, separately and collectively.").) The Settlement Agreement does not prohibit or place any restrictions on such assignments. Pursuant to its assignment, Monster is entitled to enforce VPX's agreement to arbitrate under the Settlement Agreement.

*Second*, VPX and JHO argue that JHO is an indispensable party that is not bound by the Settlement Agreement's arbitration clause. (Compl., ¶ 52(f) ("JHO is, therefore, an indispensable party, but has not agreed to and is not bound by the arbitration clause in the Settlement Agreement.").) Plaintiffs are wrong on both counts.

JHO is not an indispensable party. While JHO might be the registered owner of VPX's Bang trademarks, the registered owner is only indispensable if it controls "all substantial rights in the intellectual property." *Malovani v. Doe*, 2012 WL 12886493, at *5 (C.D. Cal. May 14, 2012). VPX has argued that JHO is not an indispensable party in other cases. For example, VPX recently claimed that "VPX is the exclusive licensee of all of the intellectual property rights for BANG®, including the BANG Trademark, . . . including the right to sue third parties for infringement of the BANG Trademark ***without the necessity of adding or joining JHO as a party***." (Popp Decl., Ex. 7, ¶ 25.) Moreover, VPX executed an arbitration agreement with Orange Bang implicating VPX's Bang trademarks without JHO's consent or involvement as recently as January of this year. (Compl., ¶ 38; Popp Decl., Ex. 5.) As VPX controls substantial rights in the Bang marks, JHO is not indispensable.

And even assuming JHO were an indispensable party (it is not), JHO is bound by VPX's agreement to arbitrate disputes concerning the Bang trademarks. VPX indisputably owned and registered the '129 trademark and obligated itself to limit its

use of other "Bang" trademarks. (Settlement Agreement, §§ 4, 7E, 7F.) It is well established that an assignee (JHO) never stands in a better position than the assignor (VPX). "When a trademark is assigned, the assignee stands into the shoes of the assignor [, acquiring] not only all the rights and priorities of the assignor, ***but also any burdens and limitations on use that were incumbent on the assignor***." *Russell Rd. Food & Beverage, LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003) (same). Any purported transfer of the trademark between JHO and VPX does not permit Plaintiffs to wriggle out from under the constraints on those trademarks, including the constraints imposed by the Settlement Agreement.

*Third*, VPX and JHO argue that the arbitration demand improperly applies to products and trademarks that postdate the Settlement Agreement. (Compl., ¶¶ 22, 52(f).) Not true. The Settlement Agreement explicitly contemplates that VPX could use Bang marks in connection with (1) "its existing . . . beverages," ***as well as*** (2) any other "nutritionally fortified beverage which enhances performance . . . ." (Settlement Agreement, §§ 7A, 7D.) It also contemplates, and places limitations on, future trademarks. (Settlement Agreement, § 7F (Orange Bang will not oppose VPX's "BANG pending or ***future*** applications in International Class 5 so long as the trademark application conforms to the terms of this Agreement.").)

*Fourth*, VPX and JHO argue that the parties did not agree to arbitrate claims for injunctive relief. (Compl., ¶ 50.) They confuse the analysis. An arbitration agreement, like any contract, is interpreted as written. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties."). VPX agreed to arbitrate "any claim or controversy . . . " without carving out injunctive relief. (Settlement Agreement, § 18.) If VPX wished to carve out claims for injunctive relief, it could have bargained to do so. It did not, and it cannot force this Court to rewrite the parties' agreement. *Cf. In re Lithium Ion Batters Antitrust Litig.*, 2016 WL 5791357, at *5 (N.D. Cal. Oct. 4, 2016) (discussing

injunctive relief carve out in arbitration agreement).

## IV. CONCLUSION

The Court should grant this Motion, allow the parties' claims to continue proceeding in arbitration, and stay this action pending resolution of arbitration. The parties have reserved all arbitrability questions for the arbitrator, so the Court cannot reach questions of validity and scope. *Brennan*, 796 F.3d at 1130-32. Even if the Court reaches arbitrability, moreover, the two valid arbitration agreements between the parties encompass all claims at issue in this dispute, so arbitration is mandatory. *Chiron*, 207 F.3d at 1130.

Dated: September 16, 2020

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ Moez M. Kaba*
Moez M. Kaba
*Attorneys for Defendant Monster Energy Company*

KNOBBE, MARTENS, OLSON & BEAR, LLP

By: */s/ Steven J. Nataupsky*
Steven J. Nataupsky
*Attorneys for Defendant Orange Bang, Inc.*