HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Allison Libeu, State Bar No. 244487
alibeu@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 775-0898

*Attorneys for Defendant Monster Energy Company*

KNOBBE, MARTENS, OLSON & BEAR, LLP
Steven J. Nataupsky, State Bar No. 155913
steven.nataupsky@knobbe.com
Lynda Zadra-Symes, State Bar. No. 156511
lynda.zadrasymes@knobbe.com
Matthew Bellinger, State Bar No. 222228
matt.bellinger@knobbe.com
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Defendant Orange Bang, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ORANGE BANG, INC., and MONSTER ENERGY COMPANY,<br><br>Defendants. | Case No. 5:20-cv-01464-DSF-SHK<br><br>Hon. Dale S. Fischer<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO CONFIRM FINAL ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Lauren McGrory Johnson, [Proposed] Order, and Application to Seal filed concurrently herewith]<br><br>**Date:**     **May 9, 2022**<br>**Time:**     **1:30 PM**<br>**Place:**    **Courtroom 7D** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................... 1

II. BACKGROUND .............................................................................. 6

 A. Orange Bang Sues VPX for Trademark Infringement in 2009 ...................................................................................... 6

 B. VPX Sues Orange Bang for Declaratory Relief in State Court in 2019 ...................................................................... 7

 C. Orange Bang and Monster Initiate Arbitration Against VPX in 2020 ......................................................................... 7

 D. VPX Initiates a Parallel Proceeding in This Court in 2020 ................... 8

 E. The Arbitrator Rules Entirely in Favor of Orange Bang and Monster ............................................................................. 8

III. LEGAL STANDARD ................................................................... 10

IV. THE AWARD MUST BE CONFIRMED ...................................... 11

 A. Defendants Have Satisfied the Statutory Conditions for Confirmation of the Award ...................................... 11

 B. None of the Limited Grounds for Vacatur Exist ................................. 14

V. THE COURT SHOULD AWARD PREJUDGMENT AND POSTJUDGMENT INTEREST .................................................. 15

VI. CONCLUSION ........................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Separation, Inc. v. Underwriters at Lloyd's of London*,
45 F.3d 288 (9th Cir. 1995) ............................................................... 17

*Akrabian v. West Coast Servicing, Inc.*,
2021 WL 4499277 (C.D. Cal. Jan. 14, 2021) .................................. 11

*AMF v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .......................................................... 4

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009) ....................................................... 15

*Collins v. Riondo*,
2022 WL 79835 (C.D. Cal. Jan. 7, 2022) ....................................... 17

*Comedy Club, Inc. v. Improv. W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ................................................ 5, 14, 15

*Doctor's Assocs., Inc. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ............................................................. 13

*Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*,
12 F.4th 1212 (10th Cir. 2021) ...................................................... 12

*Dreamwerks Production Group, Inc. v. SKG Studio, dba DreamWorks SKG*,
142 F.3d 1127 (9th Cir. 1998) ..................................................... 4, 5

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*,
103 F.3d 888 (9th Cir. 1996) ......................................................... 13

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989) ....................................................... 16

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ...................................................................... 16

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008) ............................................................. 5, 10, 14

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page(s)</u>

3

4

*Int'l Rectifier Corp. v. Sgs-Thomson Microelectronics Inc.*,
   1994 WL 896313 (C.D. Cal. Aug. 22, 1994)................................................. 17

5

6

*Lagstein v. Certain Underwriters at Lloyd's, London*,
   607 F.3d 634 (9th Cir. 2010)........................................................................... 15

7

8

*Merrill Lynch, Piercer, Fenner & Smith, Inc. v. Moore*,
   171 F. App'x 545 (9th Cir. 2006)................................................................. 13

9

10

*Ministry of Def. & Support for Armed Forces of Islamic Republic of*
   *Iran v. Cubic Def. Sys., Inc.*,
   2013 WL 55828 (S.D. Cal. Jan. 3, 2013)...................................................... 16

11

12

*Morgan Stanley Smith Barney LLC v. Madero*,
   2015 WL 13917978 (C.D. Cal. 2015)............................................................ 10

13

14

*PTA-FLA, Inc. v. ZTE USA, Inc.*,
   844 F.3d 1299 (11th Cir. 2016)....................................................................... 11

15

16

*Romero v. Citibank USA, Nat. Ass'n*,
   551 F. Supp. 2d 1010 (E.D. Cal. Feb. 26, 2008)............................................ 13

17

*Smiga v. Dean Witter Reynolds, Inc.*,
   766 F.2d 698 (S.D.N.Y. 1985) ....................................................................... 13

18

19

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,
   591 F.3d 1167 (9th Cir. 2010).................................................................... 5, 14

20

21

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009)........................................................................... 10

22

23

*Vivi Robyn Stafford v. Baart Behav. Health Servs., Inc.*,
   2020 WL 9172809 (C.D. Cal. Mar. 11, 2020) ........................................ 10, 11

24

25

*Voltage Pictures, LLC v. Gulf Film, LLC*,
   2018 WL 2110937 (C.D. Cal. Apr. 17, 2018)................................................ 15

26

*Wang v. Bears, Stearns & Co, Inc.*,
   2010 WL 11520541 (C.D. Cal. Jan. 13, 2010)............................................... 16

27

28

## TABLE OF AUTHORITIES (cont.)

Page(s)

**Statutes**

15 U.S.C. § 1051 ................................................................................... 12

28 U.S.C. § 1338(a) .............................................................................. 12

28 U.S.C. § 1332(a) .............................................................................. 12

28 U.S.C. § 1367(a) .............................................................................. 12

28 U.S.C. § 1961 ................................................................................... 16

9 U.S.C. §§ 10 ................................................................................. 5, 10

9 U.S.C. § 11 .................................................................................... 5, 10

9 U.S.C. § 9 ............................................................................... 1, 12, 14

California Business & Professions Code §§ 17200 ................................ 12

**Other Authorities**

American Arbitration Association, Commercial Rules and Mediation Procedures, Rule R-52(c) ......................................................................... 14

DEFENDANTS' MOTION TO CONFIRM FINAL ARBITRATION AWARD

## NOTICE OF MOTION

**TO ALL PARTIES AND THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that on May 9, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, United States District Judge, in Courtroom 7D of the United States District Court, Central District of California, 350 West 1st Street, Los Angeles, California 90012, Defendants Orange Bang, Inc. and Monster Energy Company ("Defendants") will and hereby do jointly move this Court to confirm the Final Arbitration Award issued in *Orange Bang, Inc. v. Vital Pharmaceuticals*, AAA Case No. 01-20-0005-6081, on April 4, 2022.

On November 30, 2020, this Court granted Defendants' Motion to Compel Arbitration and ordered this matter to arbitration. The arbitration hearing took place from October 4 to 14, 2021 before Arbitrator Bruce Isaacs. On January 6, 2022, the Arbitrator issued an Interim Arbitration Award ruling entirely in favor of Defendants. Following briefing on attorney's fees and costs, the Arbitrator issued a Final Award on April 4, 2022, awarding Defendants $175 million in monetary damages, a 5% royalty on all future net sales of Bang-branded products, and $9,298,443.90 in attorney's fees and costs. Defendants now move this Court to confirm the Final Award pursuant to 9 U.S.C. § 9.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Lauren McGrory Johnson, all papers and records on file in this case, and any further argument or evidence that may be made at the hearing on the Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

1    Dated: April 6, 2022                    Respectfully submitted,

2                                            HUESTON HENNIGAN LLP

3

4                                            By:   /s/ Moez M. Kaba
5                                                  Moez M. Kaba
                                                   *Attorneys for Defendant Monster Energy*
6                                                  *Company*

7                                            KNOBBE, MARTENS, OLSON & BEAR, LLP

8

9                                            By:    /s/ Steven J. Nataupsky
10                                                 Steven J. Nataupsky
                                                   *Attorneys for Defendant Orange Bang, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO CONFIRM FINAL ARBITRATION AWARD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster" and collectively, "Defendants") move to confirm the Final Arbitration Award ("Award") issued on April 4, 2022, in *Orange Bang, Inc. v. Vital Pharmaceuticals*, AAA Case No. 01-20-0005-6081 (the "Arbitration"). In the Award, the Arbitrator ruled entirely in Defendants' favor after finding, among other things, that VPX's Bang Energy RTD ("ready-to-drink") and other Bang-branded products are not creatine-based and do not provide the benefits of creatine. As a result, the Arbitrator found VPX liable for breach of contract and trademark infringement, as well as for related federal and common law trademark claims. He awarded Defendants $175 million in monetary damages, a 5% royalty on all future net sales of VPX's Bang-branded products, and $9,298,443.90 in attorney's fees and costs.

The 177-page Award was issued following a two-week arbitration hearing, two rounds of closing arguments, hundreds of pages of post-hearing briefs by both sides, and a separate round of briefing and two additional hearings on Defendants' request for attorney's fees and costs, as well as Defendants' requests for certain clarifications to the Interim Award. After evaluating the extensive evidence presented throughout the proceedings, the Arbitrator determined that VPX breached a 2010 Settlement Agreement ("Settlement Agreement") that it entered into with Orange Bang and infringed Orange Bang's valuable federally registered trademark rights to the Bang marks. The Settlement Agreement resolved a lawsuit Orange Bang brought against VPX in 2009 for trademark infringement based on VPX's use of the Bang mark on a pre-workout beverage purporting to contain creatine. Pursuant to the terms of the Settlement Agreement, VPX is permitted to use the Bang mark only on "creatine-based" products or certain other beverages that are marketed and sold *only*

1  in vitamin and dietary supplement channels. The Arbitrator found that VPX did not

2  comply with either of these conditions.

3  *First*, the Arbitrator determined that VPX's Bang-branded products, which

4  contain creatyl-l-leucine ("CLL" or, as advertised by VPX, "Super Creatine"), are

5  not creatine-based. The Arbitrator evaluated case law and evidence of the parties'

6  negotiations and determined that a "creatine-based" product "is one in which the

7  main, supporting or carrying ingredient is creatine." (Declaration of Lauren Johnson

8  ("Johnson Decl."), Ex. 1 (Award) at 46.) The Arbitrator further explained that "if a

9  product fails to function in a way for which the product was designed, i.e., if the

10 product fails to provide the benefits of creatine, then the product cannot be deemed to

11 be 'creatine-based.'" (*Id.* at 47.) Whether Bang Energy RTD (and other Bang

12 products) are creatine-based thus turned "on two questions: (1) is CLL [Super

13 Creatine] creatine? (2) Even assuming for the sake of discussion that CLL is creatine,

14 does BANG Energy RTD and other Bang-branded products contain enough creatine

15 so as to provide the benefits of creatine, in an efficacious manner, to the human

16 body?" (*Id.* at 48-49.)

17 Upon examining extensive evidence presented by scientists and others at the

18 Arbitration, the Arbitrator ruled that Super Creatine is not creatine and does not

19 provide the benefits of creatine. As the Award explains, several studies on Bang

20 Energy and Super Creatine "performed by highly-regarded researchers" demonstrate

21 that Super Creatine "does not increase creatine levels in the blood, tissue, muscle (or

22 brain)." (*Id.* at 56.) These studies also demonstrate that Super Creatine "does not

23 create an efficacious effect in the human body like creatine." (*Id.*) Because "[Super

24 Creatine] does not increase creatine levels in the body, it is not creatine." (*Id.* at 57.)

25 The Arbitrator emphasized that VPX's own creatine expert made "some

26 significant admissions, some of which can only be characterized as stunning and not

27 helpful in advancing VPX's position in this case." (*Id.* at 51.) Among other things,

28 VPX's expert conceded that "there is no evidence to support the efficacy of CLL,"

"that he has no evidence that CLL has the same biological function of creatine," that "he has no evidence that CLL increases blood creatine levels at all," and that "based on current available evidence, and speaking as a scientist, it is not reasonable for VPX to advertise Bang Energy RTD as a source of creatine or for VPX to advertise CLL or super creatine as a source of creatine." (*Id.* at 52-54.)

The Arbitrator further held that even if Super Creatine were creatine (it is not), both sides' experts "all agree that VPX's Bang-branded products do not have a sufficient amount of purported creatine in them" to "provide the benefits of creatine." (*Id.* at 57.) The Arbitrator concluded that "[i]n this respect, VPX's Bang-branded products are not 'creatine-based' for the separate and independent reason that they contain only a trivial amount of purported creatine that is far below the 3,000 mg threshold necessary to provide the benefits of creatine." (*Id.*)

*Second*, the Arbitrator held that because VPX's Bang products are not creatine-based, they are required to be marketed and sold only in vitamin and dietary supplement channels. (*Id.* at 63-64.) But the "overwhelming and essentially uncontradicted evidence at the hearing demonstrated that VPX has consistently sold BANG Energy RTD and other VPX Bang branded products" outside these channels. (*Id.* at 64.) Among other key admissions, VPX admitted at the hearing that its Bang products are sold outside these channels and that its marketing targets mainstream consumers. (*Id.* at 64-66.) The Arbitrator emphasized that VPX "did essentially nothing in order to ensure compliance with the VPX Marketing and Sales Restrictions." (*Id.* at 32.) "[I]t is simply not possible for VPX to comply with the VPX Marketing and Sales Restrictions when it never bothered to communicate the existence of the VPX Marketing and Sales Restrictions to its own employees, to its own customers, to its own distributors (such as Pepsi, []) or to the all-important retailers." (*Id.* at 33.)

DEFENDANTS' MOTION TO CONFIRM FINAL ARBITRATION AWARD

1    Because VPX's Bang products are not creatine-based and are not marketed
2  and sold only in vitamin and dietary supplement channels, the Arbitrator found that
3  VPX breached and is in breach of the 2010 Settlement Agreement. (*Id.* at 63-67.)

4    *Third*, the Arbitrator found that VPX is also liable for trademark infringement
5  and Orange Bang's related trademark claims. (*Id.* at 67-80.) He evaluated the case
6  law and evidence relating to each of the factors set forth in *AMF v. Sleekcraft Boats*,
7  599 F.2d 341 (9th Cir. 1979) and found that all eight factors weigh in favor of
8  Orange Bang, although Orange Bang did not need to establish all eight factors to
9  prevail. (*Id.* at 68-69.) The Arbitrator explained that the three "pivotal" factors
10 identified by the Ninth Circuit in *Dreamwerks Production Group, Inc. v. SKG*
11 *Studio, dba DreamWorks SKG*, 142 F.3d 1127 (9th Cir. 1998)—strength of the mark,
12 relatedness of the goods, and similarity of the marks—all "cut strongly or
13 convincingly in favor of Orange Bang," which on its own "is already enough to
14 conclude that VPX is liable for trademark infringement." (*Id.* at 74.)

15   As a result of VPX's breach of contract and trademark infringement, the
16 Arbitrator found two measures of monetary relief were appropriate: disgorgement of
17 VPX's profits or, alternatively, a reasonable royalty. (*Id.* at 174-75.) After extensive
18 analysis of the record, including evaluation of VPX's sales data and the opinions of
19 the parties' damages experts, the Arbitrator determined that VPX unlawfully earned
20 $175 million in profits as a result of its trademark infringement and $157.5 million as
21 a result of its breaches of the Settlement Agreement. (*Id.*) As for a reasonable
22 royalty, the Arbitrator analyzed the *Georgia-Pacific* factors, evaluated comparable
23 trademark license agreements within the beverage industry, and considered facts
24 relevant to a hypothetical negotiation between the parties. (*Id.* at 84-114.) Based on
25 this analysis, the Arbitrator determined that VPX owed $112.3 million in royalties as
26 a result of its trademark infringement and $101.5 million as a result of its breaches of
27 the Settlement Agreement. (*Id.* at 174-75.) The Arbitrator held that Defendants could
28 recover one of these four monetary awards, at Defendants' election. (*Id.* at 175.)

- 4 -

Defendants timely elected to recover $175 million in disgorged profits under the trademark infringement claim. (*Id.* at 138.)

To remedy the future harm caused by VPX's ongoing breach of the Settlement Agreement and trademark infringement, the Arbitrator also issued a permanent injunction (i) prohibiting VPX from using Orange Bang's trademarks at all within the twelve states where Orange Bang sells its products and (ii) prohibiting VPX from using Orange Bang's trademarks in the remaining 38 states and internationally except in a manner that complies with paragraph 7(D) of the Settlement Agreement. (*Id.* at 147-49.) In addition, the Arbitrator awarded Defendants an ongoing royalty of five percent of VPX's net sales of Bang-branded products, which VPX could elect to pay in lieu of complying with the injunction. (*Id.* at 175.) VPX elected to pay the royalty. (*Id.*; *see also id.* at 151-52.)

The Award must be confirmed by this Court under governing law. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("On application for an order confirming the arbitration award, the court ***must*** grant the order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10-11]."). None of the extremely limited grounds for vacatur exist. *See U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (setting forth the "exclusive" and limited grounds for vacatur). To the contrary, the Award clearly demonstrates that the Arbitrator issued a well-reasoned decision based squarely on governing law. *See Comedy Club, Inc. v. Improv. W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (only "manifest disregard" for the law will warrant vacating award on ground that arbitrator exceeded his powers, which exists only where it is "clear from the record that the arbitrator [] recognized the applicable law and then ignored it").

As such, Defendants respectfully request that the Court issue an order confirming the Award. Defendants also request prejudgment and postjudgment interest on the Award.

DEFENDANTS' MOTION TO CONFIRM FINAL ARBITRATION AWARD

## II.    **BACKGROUND**

### A.    **Orange Bang Sues VPX for Trademark Infringement in 2009**

Orange Bang, a family-owned beverage business established in 1971 and the rightful owner of several federal trademark registrations for the Bang marks, started selling beverages under the Bang marks in the 1970s. (Johnson Decl., Ex. 1 at 7-8.) Decades later, in 2008, VPX began selling its own Bang beverage, a product known as Bang Pre-Workout. (*Id.* at 8-9.) VPX marketed Bang Pre-Workout as a nutritional supplement that purportedly contained the "WORLD'S ONLY STABLE LIQUID CREATINE." (*Id.* at 9.)

In 2009, Orange Bang learned that VPX was marketing and selling a product under the Bang mark and promptly sent VPX a cease-and-desist letter. (*Id.* at 10.) VPX refused to cease its infringing activities, forcing Orange Bang to sue VPX for trademark infringement (the "2009 Action"). (*Id.* at 12-13.) The initial cease-and-desist letter and filing of the 2009 Action initiated settlement negotiations that culminated in the 2010 Settlement Agreement executed by the parties. (*Id.* at 10-29.) Based VPX's representations during the negotiations, Orange Bang proposed a concept pursuant to which both products could co-exist by remaining within their own particular sales channels. (*Id.*)

The Settlement Agreement clearly delineated these lanes. Among other things, VPX agreed that it would use the Bang mark *only* in association with (1) "a nutritionally fortified, creatine-based beverage"; or (2) "a nutritionally fortified beverage which enhances performance, and which is not creatine based," provided any such beverage "is only marketed and sold through vitamin and nutritional supplement stores," or through "the vitamin and dietary supplement sections only of any convenience or other stores" ("Nutritional Channels"). (Johnson Decl., Ex. 2 (Settlement Agreement) ¶ 7(A)-(D).)

**B.** **VPX Sues Orange Bang for Declaratory Relief in State Court in 2019**

Following the Settlement Agreement, VPX dramatically expanded its Bang products and marketing of those products. (Johnson Decl., Ex. 1 at 33-39.) In 2019, Orange Bang discovered that VPX was breaching the Settlement Agreement by selling products that did not even purport to contain creatine. (*Id.* at 37.) After discovering VPX's misconduct, Orange Bang demanded in a series of letters that VPX cease breaching the Settlement Agreement and comply with its terms. (*Id.* at 37-38.) VPX refused to do so. Instead, in August 2019, VPX filed a complaint for declaratory judgment as to whether it had breached the Settlement Agreement in Los Angeles Superior Court (the "LASC Action"). (*Id.* at 39-40; ECF 23-10.)

On September 27, 2019, Orange Bang filed a motion to compel arbitration in the LASC Action based on the arbitration provision in the 2010 Settlement Agreement. (ECF 21-2.) In January 2020, VPX's counsel offered to dismiss the LASC Action and proceed in binding arbitration. (ECF 32-3.) Orange Bang accepted this offer. (*Id.*)

**C.** **Orange Bang and Monster Initiate Arbitration Against VPX in 2020**

On June 16, 2020, Orange Bang and Monster—to whom Orange Bang assigned certain of its rights under the Settlement Agreement[1]—initiated arbitration against VPX before the American Arbitration Association ("the AAA"). (ECF 34-5 (Arbitration Demand)). On July 7, 2020, the AAA commenced the rank-and-strike

---

[1] This Court already determined that Orange Bang partially assigned its rights in the arbitration agreement to Monster and that Monster was a proper party to the Arbitration. (ECF 50 at 9-10 ("The Court agrees with the arbitrator in the parallel arbitration action that, reading these clauses together, the Assignment Agreement assigned the contract claims under the Settlement Agreement but not the Lanham Act and unfair competition claims because those are related to OBI's trademark rights ... Therefore, both Monster and [Orange Bang] can enforce the arbitration agreement and be parties to the arbitration.").)

1 arbitrator selection process. (Johnson Decl., Ex. 3.) On July 23, 2020, after the
2 parties completed this process, the AAA appointed Bruce Isaacs, Esq. as the
3 Arbitrator. (Johnson Decl., Ex. 4.)

4 **D.    VPX Initiates a Parallel Proceeding in This Court in 2020**

5      On the same day that the Arbitrator was selected, VPX, along with JHO
6 Intellectual Property Holdings, LLC ("JHO")[2], filed a parallel proceeding against
7 Orange Bang and Monster in this Court. (ECF 1.) VPX then proceeded to file a First
8 Amended Complaint (ECF 21) in this action and two separate motions to stay the
9 arbitration (ECF 23, 37). On October 7, 2020, Orange Bang and Monster filed a
10 motion to compel arbitration (ECF 32), which the Court granted on November 30,
11 2020 (ECF 50).

12      After granting Orange Bang and Monster's motion to compel arbitration, the
13 Court stayed this action and retained jurisdiction over this matter. (ECF 50 at 15.)
14 The Court ordered the parties to file joint status reports on the status of the
15 Arbitration every 120 days and advise the Court within 30 days of the issuance of the
16 final arbitration award. (*Id.*)

17 **E.    The Arbitrator Rules Entirely in Favor of Orange Bang and**
18 **Monster**

19      During the arbitration hearing from October 4-14, 2021, the Arbitrator heard
20 extensive argument and evidence from both sides. (Johnson Decl., Ex. 1 at 4-5.)
21 Following the hearing, both sides submitted post-hearing briefs, proposed Interim
22 Arbitration Awards, and reply briefs. (*Id.*) A second round of closing arguments took
23 place on December 10, 2021. (*Id.* at 5.)

24      On January 6, 2022, the Arbitrator issued an Interim Award, ruling for Orange
25 Bang and Monster on all claims and rejecting VPX's counterclaims. (Johnson Decl.

26

27 ─────────────────────

28 [2] This Court has determined that JHO is "bound by the Settlement Agreement" as
VPX's assignee to the Settlement Agreement. (ECF 50 at 11.)

1   ¶ 7.) The Interim Award found that VPX is in breach of paragraph 7 of the 2010
2   Settlement Agreement because its Bang products are not creatine-based and are not
3   sold only in the Nutritional Channel. (*Id.*) It also found VPX liable for trademark
4   infringement because there is a likelihood of reverse confusion from VPX's use of
5   the Bang marks. (*Id.*) The Interim Award granted Defendants the option of choosing
6   either to disgorge VPX's profits or a reasonable royalty on past sales of VPX's
7   Bang-branded products under either their breach of contract or trademark
8   infringement claim. (Johnson Decl., Ex. 1 at 138.) It also found that due to the
9   likelihood of VPX's continuing breach of the Settlement Agreement and trademark
10   infringement, a permanent injunction should issue. (*Id.* at 150-52.) In lieu of the
11   issuance of a permanent injunction, the Arbitrator gave VPX the option of paying a
12   royalty at the rate of 5% of VPX's net sales derived from the sale of Bang branded
13   products, including BANG Energy RTD, on an ongoing, continuing basis for so long
14   as VPX or JHO make any use of the BANG mark. (*Id.*)

15       On January 31, 2022, both parties made the elections required by the Interim
16   Award. Orange Bang and Monster elected to recover, as their monetary award, the
17   disgorgement of profits attributable to VPX's infringement of the BANG mark in the
18   amount of $175 million. (*Id.* at 138.) VPX elected to pay a 5% future royalty
19   payment in lieu of the issuance of the permanent injunction. (*Id.* at 175.) Pursuant to
20   this election, VPX must pay Defendants the royalty each financial quarter within 45
21   days of the close of the financial quarter. (*Id.* at 150-51.) VPX must also provide a
22   quarterly accounting statement with each payment, and Defendants "shall be entitled
23   to exercise audit and inspection rights with respect thereto." (*Id.* at 151.) The Interim
24   Award also ordered Orange Bang and Monster to serve a detailed cost bill together
25   with their briefing and evidence to address both the issue of entitlement to attorney's
26   fees and the amount of attorney's fees. (Johnson Decl. ¶ 8.) On January 18, 2022,
27   Orange Bang and Monster submitted their cost bill and brief. (*Id.* ¶ 9.) The Arbitrator
28   granted VPX's request for an extension for its opposition, and VPX submitted its

opposition on February 8, 2022. (*Id*.) Orange Bang and Monster submitted their reply on February 15, 2022, and the Arbitrator held a hearing on February 18, 2022. (*Id*.) At the hearing, the Arbitrator ordered additional briefing from the parties relating to certain clarifications to the Interim Award that Orange Bang and Monster had requested. (*Id*. ¶ 10.) The parties simultaneously submitted briefs on February 25, March 2, and March 9, 2022. (*Id*.) At VPX's request, the Arbitrator held another hearing on March 17, 2022. (*Id*.)

Following that hearing, the Arbitrator issued the Final Award, which includes: (1) disgorgement of profits attributable to VPX's infringement of the BANG mark in the amount of $175 million; (2) a 5% future royalty payment in lieu of VPX's compliance with the permanent injunction and award of specific performance; and (3) an award to Orange Bang and Monster of $9,298,443.90 in attorney's fees and costs. (*Id*. at 174-76.)

## III.   **LEGAL STANDARD**

"The FAA provides a means of judicial enforcement where a controversy has been arbitrated pursuant to a valid arbitration provision and the arbitrator has made an award." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918-19 (9th Cir. 2009). "[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Vivi Robyn Stafford v. Baart Behav. Health Servs., Inc.*, 2020 WL 9172809, at *3 (C.D. Cal. Mar. 11, 2020). "On application for an order confirming the arbitration award, the court ***must*** grant the order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10-11]." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (emphasis added). "Given the statutory mandate, the court's role in a proceeding to confirm an arbitration award is severely limited." *Morgan Stanley Smith Barney LLC v. Madero*, 2015 WL 13917978, at *2 (C.D. Cal. 2015).

**IV.**      **THE AWARD MUST BE CONFIRMED**

      **A.**      **Defendants Have Satisfied the Statutory Conditions for Confirmation of the Award**

Section 9 of the Federal Arbitration Act ("FAA") requires a party seeking to confirm an arbitration award to (i) seek confirmation within one year of the award (ii) in the appropriate court, and (iii) serve notice of the petition on the opposing party. Defendants have satisfied each of these conditions.

As to conditions (i) and (iii), Defendants filed the instant Motion within one year of the issuance of the Final Award on April 4, 2022 and served notice of the Motion on Plaintiffs. (Johnson Decl. ¶ 6.)

As to condition (ii), this Court is the appropriate court because it has subject matter and personal jurisdiction over Plaintiffs, and venue is proper. *See, e.g.*, *Akrabian v. West Coast Servicing, Inc.*, 2021 WL 4499277, at *1 (C.D. Cal. Jan. 14, 2021) (explaining that a federal court must have independent jurisdictional basis over dispute underlying motion to compel arbitration).

      **1.**      The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this matter for three independent reasons.

*First*, this court retained jurisdiction over this action following the Court's order compelling the Arbitration and thus has jurisdiction over this motion to confirm. (ECF 50 at 15 (granting motion to compel arbitration and ordering the parties to advise the Court within 30 days of issuance of the final arbitration decision)); *see also Vivi Robyn Stafford v. Baart Behav. Health Servs., Inc.*, 2020 WL 9172809, at *2-3 (C.D. Cal. Mar. 11, 2020) (holding that, having granted the motion to compel arbitration, "the district court thus retained jurisdiction over the motion to confirm"); *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) ("[I]t is by now undisputed that when a federal district court grants a motion to compel arbitration it retains jurisdiction to confirm or vacate the resulting

arbitration award under 9 U.S.C. §§ 9-10."); *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1227 (10th Cir. 2021) ("There appears to be no dispute that when a court with subject-matter jurisdiction orders arbitration and then stays the suit pending resolution of the arbitral proceedings, that court retains jurisdiction to confirm or set aside the arbitral award.").

*Second¸* the Court has federal question jurisdiction because the Arbitration involved claims for trademark infringement and false designation of origin under the Lanham Act. *See* 15 U.S.C. § 1051; 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."). The Court has supplemental jurisdiction over the remaining claims for breach of contract, unfair competition under California Business & Professions Code §§ 17200 *et seq.*, and common law unfair competition because they are part of the same case or controversy as the trademark infringement and false designation of origin claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.").

*Finally*, the Court has diversity jurisdiction over this matter. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of different states."). VPX is a Florida corporation with its principal place of business in Weston, Florida. (ECF 21 (FAC) ¶ 5.) JHO is Florida limited liability company with its principal place of business in Weston, Florida. (*Id.* ¶ 6.) As VPX has acknowledged in this case, Orange Bang is a California corporation with its principal place of business in California. (*Id.* ¶ 7.) Monster is a Delaware corporation with its principal place of business in Corona, California. (*Id.* ¶ 8.) There thus exists complete diversity between the parties. The

1   amount in controversy is satisfied because Defendants asserted more than $75,000 in
2   damages. (Johnson Decl., Ex. 1 at 174-76); *see also Merrill Lynch, Piercer, Fenner*
3   *& Smith, Inc. v. Moore*, 171 F. App'x 545, 546 (9th Cir. 2006) ("The amount at stake
4   in the underlying litigation . . . is the amount in controversy for the purposes [of]
5   diversity jurisdiction.").

6   2.   This Court Has Personal Jurisdiction Over Plaintiffs

7   The Court also has personal jurisdiction over Plaintiffs. *First*, Plaintiffs
8   already submitted to this Court's jurisdiction by filing their initial complaint in this
9   action with this Court. *See Romero v. Citibank USA, Nat. Ass'n*, 551 F. Supp. 2d
10  1010, 1014 (E.D. Cal. Feb. 26, 2008) (holding that court had personal jurisdiction
11  over plaintiff for defendant's motion to confirm arbitration award where plaintiff had
12  initiated the case and submitted to court's jurisdiction by filing a complaint that was
13  compelled to arbitration; explaining that the motion to confirm was part of the same
14  controversy); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (S.D.N.Y.
15  1985) ("[an] application for an order to arbitrate, up to and including the
16  confirmation award, [is] all one proceeding, and thus, [are] not separable
17  controversies" for purposes of personal jurisdiction analysis).

18  *Second*, the Court has personal jurisdiction over Plaintiffs because Plaintiffs
19  agreed to arbitrate in California and participated in arbitration proceedings in
20  California. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888,
21  893 (9th Cir. 1996) (affirming that district court had personal jurisdiction over out-
22  of-state company where out-of-state company had agreed to arbitrate in California
23  and had participated in arbitration proceedings in California); *Doctor's Assocs., Inc.*
24  *v. Stuart*, 85 F.3d 975, 979 (2d Cir. 1996) ("When a party agrees to arbitrate in a
25  state, where the Federal Arbitration Act makes such agreements specifically
26  enforceable, that party must be deemed to have consented to the jurisdiction of the
27  court that could compel the arbitration proceeding in that state.").

28

### 3. Venue Is Proper

Venue is proper in this judicial district. Per the 2010 Settlement Agreement, "[j]udgment on any award rendered by [the] arbitrator may be entered in *any court having jurisdiction over the subject matter* of the controversy."[3] (Johnson Decl., Ex. 2 ¶ 18(a) (emphasis added).) As discussed, the Court has subject matter jurisdiction over the claims at issue in this dispute. Moreover, venue is proper for the independent reason that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The Arbitration that resulted in the Final Award took place in Los Angeles County, California, which is in the Central District of California.

### B. None of the Limited Grounds for Vacatur Exist

Because the above requirements are met, the Court must grant the Award unless it is vacated, modified, or corrected pursuant to Sections 10-11 of the FAA. *Hall Street Assocs.,* 552 U.S. at 87. "Review of an arbitration award is both limited and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009), *cert. denied* 558 U.S. 824 (2009). The exclusive grounds pursuant to which a court reviewing an arbitration award under the FAA may grant vacatur include only (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrator; (3) where the arbitrator was guilty of misconduct in "refusing to postpone the hearing" or "refusing to hear evidence pertinent and material to the controversy"; or (4) where the arbitrator exceeded his powers. *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

---

[3] *See also* American Arbitration Association, Commercial Rules and Mediation Procedures, Rule R-52(c) ("Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.").

DEFENDANTS' MOTION TO CONFIRM FINAL ARBITRATION AWARD

"An arbitrator exceeds her power not by merely interpreting or applying the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Voltage Pictures, LLC v. Gulf Film, LLC*, 2018 WL 2110937, at *3-4 (C.D. Cal. Apr. 17, 2018). "[C]onfirmation is required even in the face of erroneous findings of fact or misinterpretations of law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010) ("Whether or not the [arbitrator's] findings are supported by the evidence in the record is beyond the scope of [federal court] review."); *Bosack v. Soward*, 586 F.3d 1096, 1102, 1106 (9th Cir. 2009) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award. . . . We will not vacate an award simply because we might have interpreted the contract differently."). A manifest disregard for the law exists only where it is "clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Comedy Club, Inc.*, 553 F.3d at 1290.

There is no basis to vacate or modify the Award. In accordance with the terms of the 2010 Settlement Agreement, the hearing was conducted by a neutral arbitrator, Bruce Isaacs. Each party had a full and fair opportunity to present its case during the eight-day arbitration hearing. After the hearing, each party submitted post-hearing briefs and reply briefs, and then appeared for a second round of closing arguments before Mr. Isaacs. Mr. Isaacs issued a well-reasoned decision that extensively evaluated the evidence and applicable law. (Johnson Decl., Ex. 1.) The Award is certainly not "irrational," nor does it demonstrate a "manifest disregard of the law." *Comedy Club*, 553 F.3d at 1293. As such, it must be confirmed.

## V. THE COURT SHOULD AWARD PREJUDGMENT AND POSTJUDGMENT INTEREST

The Court should also award both prejudgment and postjudgment interest on the Final Award.

- 15 -

1   ***Prejudgment Interest.*** District courts routinely grant post-award, prejudgment
2   interest on arbitration awards from the date the award was issued until the date the
3   motion to confirm is granted. *See, e.g.*, *Ministry of Def. & Support for Armed Forces*
4   *of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 2013 WL 55828, at *2 (S.D. Cal.
5   Jan. 3, 2013) (granting prejudgment interest from date award was issued until date
6   motion to confirm was granted); *Wang v. Bears, Stearns & Co, Inc.*, 2010 WL
7   11520541, *4 (C.D. Cal. Jan. 13, 2010) (same). Prejudgment interest is particularly
8   justified for a damages award based on lost profits because "[f]or the restitutionary
9   purpose of this remedy to be served fully, the defendant generally should be required
10  to turn over to the plaintiff not only the profits made from the use of his property, but
11  also the interest on these profits." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
12  886 F.2d 1545, 1552 (9th Cir. 1989). The Ninth Circuit has stated that prejudgment
13  interest "should be based on the fifty-two week Treasury bill rate" that governs
14  postjudgment interest under 28 U.S.C. § 1961, "unless the district court concludes
15  that the equities demand a different rate." *Id.* at 1552-53. The Court should thus grant
16  prejudgment interest on the entire Award at a rate determined pursuant to 28 U.S.C.
17  § 1961(a), from the date the Award was issued until the judgment on this motion to
18  confirm is issued.

19  ***Postjudgment Interest.*** "[P]ostjudgment interest on a district court judgment is
20  mandatory." *Collins v. Riondo*, 2022 WL 79835, at *5 (C.D. Cal. Jan. 7, 2022)
21  (granting postjudgment interest in connection with motion to confirm arbitration
22  award). "Post-judgment interest should be awarded on the entire amount of the
23  judgment, including any pre-judgment interest, and is typically awarded from the
24  date of judgment until the judgment is satisfied." *Id.*; *see also Air Separation, Inc. v.*
25  *Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (holding that
26  postjudgment interest should be awarded on the entire amount of the judgment,
27  including prejudgment interest and attorney's fees). "Postjudgment interest is
28  determined by federal law, [] which provides for a rate equal to the weekly average

1   1-year constant maturity Treasury yield, as published by the Board of Governors of

2   the Federal Reserve System, for the calendar week preceding the date of the

3   judgment." *Collins*, 2022 WL 79835, at *5.

4         Accordingly, Defendants are entitled to postjudgment interest at a rate

5   determined pursuant to 28 U.S.C. § 1961(a), from the date the judgment on the

6   motion to confirm issues in this action until the Award is paid in full. The Court

7   should also award postjudgment interest on any future royalty payments VPX fails to

8   pay on the date due, from the date such payments are due until the date payment is

9   received.[4] *See Int'l Rectifier Corp. v. Sgs-Thomson Microelectronics Inc.*, 1994 WL

10   896313, at *22 (C.D. Cal. Aug. 22, 1994)*, aff'd sub nom. Int'l Rectifier Corp. v.*

11   *SGS-Thompson Microelectronics, Inc.*, 56 F.3d 81 (Fed. Cir. 1995) (granting

12   postjudgment interest on future royalty payments from the date such payments

13   become due).

14   **VI.**   **<u>CONCLUSION</u>**

15         For the foregoing reasons, Defendants respectfully request that the Court

16   confirm the Final Arbitration Award and enter judgment accordingly. Defendants

17   also request that the Court award prejudgment and postjudgment interest. Finally,

18   Defendants request that the Court retain jurisdiction over disputes regarding VPX's

19   quarterly royalty payments to Defendants and Defendants' accounting and audit

20   rights associated with these payments, as well as any disputes regarding Defendants'

21   attorney's fees and costs incurred in connection with this matter and any related

22   appeal.

23

24   Dated: April 6, 2022              Respectfully submitted,

25                           HUESTON HENNIGAN LLP

26

---

[4] The Court should exclude the initial royalty payment due on April 29, 2022, as well

27   as the award of costs, from its order on postjudgment interest because the Arbitrator
already awarded postjudgment interest on these amounts. *See* Johnson Decl., Ex. 1 at

28   151, 170.

By:   /s/ Moez M. Kaba
      Moez M. Kaba
      *Attorneys for Defendant Monster Energy*
      *Company*

KNOBBE, MARTENS, OLSON & BEAR, LLP


By:   /s/ Steven J. Nataupsky
      Steven J. Nataupsky
      *Attorneys for Defendant Orange Bang, Inc.*